The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, Your Honor, and may it please the Court. My name is Dranon Adkins, and along with Molly Poe, we represent the appellants in this matter, the City of South Charleston, Officer Miller and Detectives Peterson and Moyer. I believe this panel is probably aware of the prior history of this Court when we were up here in 2016, this exact panel set on this case. As a result of that argument, this case was sent back to the District Court for it to conduct the objective analysis to determine whether any reasonable, prudent person who would have been warranted in believing to a fair probability that Mr. Robinson, the appellee, had engaged in criminal activity. In our opinion, Mr. Robinson's claims rise and fall with the existence of probable cause. The probable cause analysis requires the Court to determine whether a reasonable officer who possesses the same information that the arresting officers have would be justified in believing that probable cause existed. That analysis requires the Court to evaluate, again, all of the information known to the officers at the time. In other words, looking at the whole picture, as the Westby Court said, is there arguable probable cause, and if so, the officer should get qualified immunity for these false arrest and malicious prosecution claims. The District Court was presented with evidence that supports, and in our opinion only supports, a finding that the officers arguably had probable cause. That evidence was two videos from Walmart that show Mr. Robinson, along with two other Walmart employees, engaging in what we believe is a scheme to steal merchandise. So Robinson was at work, wasn't he? Mr. Robinson was at work. And was he doing what he was supposed to do for work? He was standing at the kiosk in the electronics department. Now, the video shows that he and— I know what—I've seen the video. I'm asking you, was he doing what he was supposed to do? Was he working? They were all on the clock, Your Honor, and— And was he standing at a place where he would be consistent where he worked? He was. OK, go ahead. But what he's doing is he's standing, and I'll demonstrate, he's standing looking at a binder, and the whole time he's doing this or looking over at Mr. Hartwell. The whole time he's looking at Mr. Hartwell? That's not true. No, the whole time he's either flipping through the binder or glancing over at Mr. Hartwell. And that means what? Well, what the video shows is Mr. Hartwell— That doesn't tell me. What does it mean? To us it means— OK. —once you have Mr. Hartwell's statement, which the officers have. I thought the district court—I wonder if we could stick with the video for a minute, because I thought the district court found some disputed issues of fact as to whether the officers had read or had access to the Hartwell statement. Well, and Your Honor, we struggled with how the court came up with that decision. But that's not something—I understand that you think the district court was wrong, but that's not something we can review in this posture. We don't have jurisdiction to review whether the district court properly assessed the factual record on that. Your Honor, we believe that the court can, in narrow circumstances, entertain factual challenges when those facts, as found by the district court, are clearly erroneous. That would be true if we were not on an interlocutory appeal, but on an interlocutory appeal from the denial of qualified immunity, we don't apply the clearly erroneous standard. We simply don't have jurisdiction to consider whether the district court properly assessed the factual record. We can only consider the legal conclusions of the district court. And Your Honor, what we believe is essentially that the district court's—I mean, the factual record was undisputed, in our opinion. Would you like to address the law that Judge Harris just asked you about? Yes, Your Honor. So I believe the court is correct that, generally speaking, you cannot look at the factual findings on an interlocutory appeal unless those—I think it's the Gold case—that the factual record versus legal inferences from the factual record. Now, what was presented below was undisputed facts showing what each officer had, but the court took inferences from those without any sort of dispute for the uncontroverted record. And basically, we think he—I don't know how to properly put this—his findings were not supported by the record presented to him. And that will be a great argument available to you when we are no longer in an interlocutory posture, but I wonder if for now you could just go back to the video, as to which there appears to be no factual dispute that the officers saw the video. The officers saw the video. There's no factual dispute that each officer viewed the video at least once, most likely multiple times. Moving to Peterson and Moyer, there was also no dispute as to whether they had the Hartwell statement. Clearly, the statement had been taken prior to their involvement. In the first opinion, the district court thought that there was a factual dispute, whether at least they had read it. It was—it existed, but whether they had access to it and whether they had read it. And again, you're on— And again, you think that's wrong, but let's just bracket for a minute the district court's findings about factual disputes. Certainly. So, the videos depict Mr. Hartwell and Ms. Robinson entering at the same time. Mr. Hartwell's getting into the kiosk, putting iPods in his pocket. Again, Mr. Robinson is looking over at Mr. Hartwell multiple times, flipping through a binder. They appear to speak at one point. And so, after Walmart was notified of this, they contacted the officers. Officers investigated. Initially, it was Officer Miller. He was able to locate several pieces of the merchandise. He also took the statement of Mr. Hartwell. Did the video show that Hartwell handed something to Robinson as the three of them were leaving? It appears that he's handing something. I can't tell what it is, and I don't think the video is clear as to what he is handing Mr. Robinson. And all three left together. And they all three left at approximately the same time. Yes, sir. So, the video doesn't clearly show that he handed. Does that answer the question? Does it deal by his question? It shows that there's something black. I can't tell. You can't tell in the video what was handed. It appears that something was handed. We can't tell. Was it his left hand or right hand? You couldn't even tell what hand? Okay, go ahead. So, part of our argument is that the district court's analysis on the probable cause or on the false arrest is that the court didn't look at everything together. Didn't look at the whole picture. Instead, it looked at the video and determined that the video itself didn't establish probable cause without crediting the officer's possession of the Hartwell statement. In fact, Can I just make sure I understand your argument? Are you arguing that the video alone is enough for probable cause? Or that the video in combination with the Hartwell statement? The video in combination with the statement. Okay. What is your position as to whether the video alone is enough for probable cause? The video alone, I don't believe goes one way or another. What he's doing is, in our opinion, is suspicious because he knows or we believe he knew that Mr. Hartwell was doing this. He looked over at him a few times while Mr. Hartwell is bent down at the kiosk. So, we think that that, in and of itself, could be suspicious and could allow the officer to look into it further, which they did in questioning Mr. Hartwell. The district court, in its opinion, in its July 2018 opinion, only mentions the Hartwell statement in passing. It simply noted that the statement isn't corroborated by what's shown on the video. So, we believe that the district court basically treated it like a trivial piece of information that shouldn't be credited in any way. However, the Westby decision says that you have to look at everything. You can't piecemeal the probable cause analysis. You can't look at everything in isolation. But that's what the district court did. It looked at the video and said the video doesn't establish probable cause. And then, when the officers had the Hartwell statement, it didn't credit what that statement said as applying to the probable cause analysis. Can I ask you a question about the state magistrate judge in this case, on Robinson's second arrest, right? The state magistrate judge found that there was not probable cause. That's correct. The preliminary hearing, the magistrate found that there was no probable cause. So, what do you want us to do with that? Well, what happened at the preliminary hearing was the prosecuting attorney did not call the officers who were there. They were subpoenaed. They were there. They were present, ready to testify. They had the video. The prosecutor didn't even show the video during the preliminary hearing. And the magistrate judge, as I understand, said, you haven't given me enough. If you have more, give it to me. And the prosecutor was like, no, we're done. Correct. And the officers cannot do anything about who is going to call them as a witness or not. They couldn't. What is your understanding of what happened there? Our understanding is the prosecutor just dropped the ball. I mean, the officers had no control over the prosecutor. The city has no control over the prosecutor. It's a county elected prosecutor. They couldn't do anything. We still don't know why the prosecutor did not call the investigating officers. But moving on, the district court, we think the district court's determination is... What was the district court's statement with respect to the Hartwell statement? Did it actually find in its opinion on remand that there was a disputed fact? Or did it conclude that Miller didn't rely on the statement? So it found that Miller didn't rely on the statement, which I don't know how... Again, we don't know how the district court... Stick with my question. So did it say anything further about that statement? It said that the statement was taken on or after his arrest on the 18th, but that he didn't rely on that in seeking to arrest him. So what's disputed about that? In other words, the only thing in dispute, it seems to me, would be whether the officer relied on it in acting, not whether it existed. And the reliance is a subjective statement as opposed to an objective statement, because the log records the statement having been taken sometime before 11 on the 18th. Correct. And Mr. Robinson was not arrested until the 19th, the day after. So logically speaking, he was aware and relied upon that statement in making... Well, you can't say he relied upon it because the district court said he didn't rely on it. But that gets... You're doing the same thing we criticized during the last appeal. It's not what the officer relied on. It's whether a reasonable officer having knowledge of the facts would have had proper... And a reasonable officer relying on the facts of the investigation... Having the facts. Having the facts, excuse me, Your Honor, would have the videos, their years of experience... Well, they had the videos and they had the statement, right? Had the statement. There's no dispute that the statement was already in existence about 11 o'clock in the morning of the 18th. Correct. And the same goes for Peterson and Moyt. The statement was taken on the 18th at the latest. They didn't get involved until months later and didn't arrest... Or didn't seek to arrest Mr. Robinson until November of 2012. When they got involved, it was initially to help Mr. Higginbotham, Walmart's asset protection manager, to get in touch with Officer Miller, who wasn't returning phone calls. And when that didn't work, they looked at the videos themselves. They reviewed the case file, looked at the Hartwell statement, and decided... And also spoke with prosecuting attorneys from Kanawha County, didn't call them at the preliminary hearing, and determined that it would be proper to refile these charges. Didn't you say the judge also made comments about it wasn't corroborated, the statement about the reliability of the statement itself? Is that correct? The district court made a finding that the statement was not corroborated by what was shown on the video. Now the statement that Mr. Hartwell gave says, quote, Greg and Gerald talked me into doing it again. They were supposed to cover me and block the cameras. Under the agreement, I would give each one of them an iPod. I don't know how that statement could or could not corroborate what was shown on the video. The fact that the only thing that in that statement that could be corroborated or not corroborated... The statement said they were supposed to do that. They were supposed to, not that they... Not that they did. Not that they did, not that they didn't. So the statement is rather gobbled, isn't it? Well, that part... That's what the judge found. It was problems with even the veracity of that in terms of that would go to whether or not a reasonable officer would rely on it, too. All of those things. You can't remove that from the facts of the case. We're not removing it from the facts. Well, did the police officer bring Hartwell to the preliminary hearing? Bring Hartwell to which preliminary hearing? His preliminary hearing? No, the one that was for Robinson. No, your honor. Why not? He said it was existing. Wouldn't he be the piece... Wouldn't he be the piece resistance, as the French say, for your case? Uh, the officers bringing Mr. Hartwell? Sure. Officers do it all the time. They get people, right? If I could respond briefly. That'd be good. The officers, the way it works in Kanawha County, the officers get subpoenaed to come. They may get 24 hours notice. I don't know that they even thought to bring Mr. Hartwell. That would have been up to the prosecutor in bringing the witnesses he thought would be necessary to establish probable cause at the preliminary hearing. Because Hartwell wasn't in the... Wasn't listed at all in terms of a statement, in terms of the affidavit for the search warrant at all, correct? I mean, for the arrest warrant, correct? That's correct. It did not make it into the arrest warrant affidavit. All right. All right. Thank you. Mr. McLaughlin? Yeah. Good morning, judges. It's a pleasure to be back here. I was here a few years ago on the same case in front of the same panel. We're back here, a similar issue, although some of the issues that we dealt with before have been dispensed with. My position is simple. They're... First off, the video is maybe an immutable record, but it still raises questions of fact that have to be interpreted, and that's one of the jobs of fact finders. For example, you can't just look at the video, you have to know something about Greg's job, or you might want to know something about what his job, Mr. Robinson, my client's job was at the time that he was doing his job, what those papers were, what he was expected to do in terms of when a customer came up, where he was, whether he knew where the cameras were, and that gets ahead, and I don't want to jump ahead to the Hartwell statement, because I'll get there in a minute, but you have to know something about it. The first person who looked at that video, who knew something very much about what a Walmart associate's job was, wrote down, made a clear record, couldn't be clearer, that Greg was distracted from noticing the activity by Gerard Davis, and that was the basis for the belief that Gerard Davis, the other employee there, was complicit in the crime. Now, he's testified in conflicting ways, well, he testified differently at his deposition, but in 2015 in this case, but he made it clear in his initial notes that Greg Robinson was distracted. Then he was asked by the human resources director at Walmart, because Greg had filed a human rights complaint about the incident, to review the video again and set it forth, and this time it was even clearer, because the first time he said Gerard Davis distracted the other associate, the second time for the human resources director at Walmart, he said Gerard Davis distracted Greg Robinson from noticing the activity. Now, there is clearly, I think, if the first person, the person whose job it is to review Walmart security videos, says, I believe this man was distracted by this other man, and that's the only reason for ever suspecting that Gerard Davis was complicit in the crime, then there's clearly got to be a question of fact. It may be an immutable record, it obviously is, and I looked for cases that address this, and I couldn't find one that was squarely on point, and I wish I had been able to, but I don't think, I mean, there's a, seems to be a tendency to believe that, because we can all look at the video, and it doesn't change from one viewing to the next, that it's, that what's seen on there, or what it shows, there's no fact questions raised, but I believe that there are fact questions raised in the video itself. I'm sorry, and the implication of that would be that we can't review, That you don't have jurisdiction. To review the district court's finding that the video by itself does not give rise to probable cause. Correct. That's my, that's the reason for bringing that up. The district court, I think, found things that the video does not, well, found that the video doesn't support probable cause, and I think that that decision is not reviewable, because also your colleague seems to have conceded it anyway, so. Yes, and then moving to the, we'll say some other things, because we've about, real quick about that, handing, whether Gerard, whether Greg Robinson was handed something by Hartwell. I was at every deposition in this case. Three officers testified, reviewed the video before they testified, allegedly reviewed the video even before that, and nobody ever mentioned that. It doesn't, I don't see it, I've never seen it, I don't. Didn't you see it near the end? Clearly, it's unclear, but it looks like, as the three are walking out, it looks like Hartwell's handing Robinson something, and I don't know if you saw what I, at least what I'm referring to in the tape. I looked at it several times, but, and I looked at it recently for this argument, and they all did lead together, which is fairly strange, if they're each doing independent jobs, but set that aside. I'm not relying on it. My question only was that that's part of the objective evidence. It could be that he was being, he's handed something as he went out. One of the things that I'm, one of the reasons I'm bringing this up then, is because it's clearly clear in the video, in watching the video, that there's fact questions, I think, raised, even though it's immutable. This is an example of one, and as an example of how debatable it is, that three people with a very strong motive to come forward with every inch of evidence that they had, that the video showed, every argument or interpretation that they had, that the video supported what they did, because they were being sued for it. None of those three people mentioned that. None of those three people saw that, or sought to bring it up, and they were, they had lots of time. It wasn't just in the moment. This is preparing for a deposition where your personal finances are at stake. You're doing the very same thing we criticized in our last opinion, and the district judge did the same thing, and says, he didn't rely on this. This officer didn't see this. The question is whether a reasonable officer looking at this would have found probable cause, which is not a certainty. It's not conviction. It's a question whether a reasonable person would conclude that a crime was being committed, and the argument you're making is that the officers didn't say anything about it, but that isn't the test. The test is what did the evidence, the undisputed evidence show, and that seems to be, ought to be the argument you're focusing on. What I meant to be saying was that, not that the officers didn't see it in what was it, 2011, 2000, a long time ago, when they arrested Greg Robinson, but that even when they were preparing for their depositions, this has nothing to do, obviously, with their arrest or their probable cause. It's just an illustration of how debatable something that may be on a video is, and how much of a question of fact still exists, even though we can all look at it. I thought your argument was the fact that the people who are defendants never raised the fact that it doesn't exist in the video. That would be a good one, too. I can't say whether... That's the conclusion that people who needed to be there, who wanted to be there, if it's there, never raised it, support the fact that it's not there. I think so. It's hard for me to say it's not there because I don't see anything that even resembles it being there. So I... To me, it's like maybe I'm missing the whole thing that... I think you've answered it the best you can. All right. So then, with respect to the Hartwell statement, and I want to focus on this for a little bit because... So first off, the district judge said it contradicted the video. That was his basis. For not going to the Hartwell video statement. And I think... So I'm going to lay this out there. I don't think that Peterson and Moyer saw the statement. I'm not sure that that matters, and I'm okay with that. But I don't think that they saw the statement. But... And I don't know that they watched the video. There's lots of contradictory evidence to suggest... There's lots of evidence to suggest that neither... Because I believe under established practice, police officers don't have to see all the evidence. They can rely on what other officers have done and said. And so they act as a group. But I think the more critical focus ought to be on what Miller knew. Well, and if we stick with Miller, that clears up some issues. Because there's no question he saw the video. There's no question that he was aware of the statement. He took the statement. He allegedly took the statement. So the questions with Miller... There is to me, and it's plain as day, that there's no question but that Miller knew that the statement... He's known all along the statement just isn't true. And there are statements in it that make it plain that it isn't true. And things that Miller did and didn't do in following that up that make it obvious that the statement isn't true and that Miller knew it wasn't true. It is clear as day. He says... In Hartwell's statement, he says, they talked me into doing it again. Under the agreement, I would give them an iPad, iPod each. Miller never asked, did you give them an iPod each? Miller never asked... That's additional information. The question is, why isn't that statement? Is there any evidence to suggest that Hartwell's statement is untrue? Yes. The fact that all seven iPods were accounted for. It makes it... It suggests that it's not true. The fact that Hartwell gave a detailed description of every place in all seven... How many were taken? I thought eight were taken, right? It was eight items and there's been some confusion... I thought six were returned. Seven were returned. There were eight items. One of those was Apple earbuds. If you look at it repeatedly in the brief, I say, at most eight or seven or at most eight. And where it says seven, it's the deposition testimony of Paul Higginbotham, who says that one of the items that goes into the eight is a set of earbuds. The seven iPods were all recovered... Well, were all accounted for. Six of them were recovered and returned to Walmart. The seventh was the one that the drug dealer... That Jeremy Hartwell gave two to a drug dealer. The drug dealer gave one to his daughter and he was going to give it back. But it's not... There's no record of that ever having been accounted for. But six were actually recovered. Five from pawn shops. One from a drug dealer, from a marijuana dealer. And the other one, the drug dealer, when Detective Allen went out to collect that, those two from the drug dealer, the drug dealer said, I gave the other one to my daughter. She's at school. I'll get it for you and give it back. There's no record that that ever happened. But we can at least presume that the drug dealer had two iPods. So that's seven of seven iPods accounted for. At most eight, if we take the eight items, the repeated statement of eight items, and put to the side Higginbotham's statement that one of those items was a set of Apple earbuds, at most eight, Hartwell saying, under the agreement, I gave two. There's no effort by Miller to recover those. Miller has obviously got an incentive to recover all the iPods. There's no effort by him to ask questions about where they are. And he has to do that. He has to undertake a reasonable investigation to see if there's any basis for corroboration. What is your statement? Your statement is fuzzy. Under the agreement, I was supposed to give them to it. Did you have such an agreement? Did you give them to them? Can I take you back to Miller's knowledge of the Hartwell statement? So the district court, its first opinion, the district court says the record is far from clear as to whether Miller had knowledge of the Hartwell statement, not whether he relied on it, whether he had knowledge of it when he arrested him, in part because Miller testified repeatedly that he obtained the Hartwell statement after he had already obtained all three warrants. So why are you saying there's no factual dispute as to whether Miller had knowledge of the Hartwell statement? Okay, so I think that I'm... I may have misunderstood the records. I'm just looking for clarification. I think that I'm wrong about that. The answer is you're right and I'm wrong. And I've been living this case and... I was wondering why you said that. But Miller did eventually. He knew about the statement. He took the statement. I think there's a question about whether Peterson or Moyer ever knew about it. But you're right. At the time that there is a dispute about whether at the time that he arrested Greg Robinson, the first time, yes, there is a dispute about whether he was aware of the statement. I apologize for that. I thought he took the statement when he arrested Hartwell. And the statement shows that it just doesn't have a date on it. And there is a log that shows it. And I thought his testimony was basically relating to Hartwell, not Robinson. But correct me if I'm wrong on that. So as I... This is going to be going from... I'm just asking about the records. Over the time... My belief is that the deposition... In the deposition of Officer Miller, he first testified that he didn't have the statement. And he later... He didn't have the statement when? At the time that he arrested Greg Robinson. He later testified, no, wait, I probably did. And so the first... Now, there's no question that he didn't have the... He testified very clearly that he didn't have the statement or rely on the statement at the time that he made the determination to seek the warrant for Greg Robinson. But... And I think there's a fact question about whether he had it at the time that he sought the warrant for Greg Robinson. But there's no question that he testified very clearly that he didn't have it when he made the determination that I'm going to seek a warrant and seek the arrest of Greg Robinson. So we have that business record that records to the hour, minute, and second of a conversation in which Miller says, I have a statement from Hartwell and I'm now going to arrest Robinson. He said to Walmart and it does say that. Yeah, that's right. It's in a Walmart record. On a minute to second log that records when it was typed. And that was typed on the 18th. Isn't that right? So it would have had been Higginbotham would have had to totally fabricate that conversation in order to support what you're saying. Very clearly, Hart... The first testimony by Officer Miller was that I didn't have it. Subsequent testimony and evidence suggests that perhaps he did have it. He very clearly said I didn't have it when I sought the arrest. It wasn't why I sought the arrest. It wasn't the basis. But that gets back to things that you didn't want. But you agree we have a contemporaneous statement made by actually to the second. There's a clock or something on these logs. And in it, Higginbotham says, Miller called and told me he has a statement from Hartwell and he plans to arrest Robinson. Isn't that a correct statement of the record? My belief is that there's something in the record that suggests that... Am I asking you about... I don't know how accurate the timestamps are in those records or Walmart records. I'm saying what it shows. I mean, I'm reading the same as you're reading. What I thought was... And my recollection was that the timestamp wasn't that important. What was important was that... Nobody made it important except that it's a time thing, a guy recording conversations as they are made and keeping them part of the corporate record. Isn't that what it shows? It may show that. Can I ask you a question? If we thought, if we looked at the record and we thought it was pretty clear that Detective Miller did have at least access to knowledge of the Hartwell statement at the time he made the arrest, but it's pretty clear that the district court nevertheless found a disputed question of fact on that point. What are we supposed to do in this posture on interlocutory review? Do we have jurisdiction to reverse the district court's fact finding or is that not something we can do in this posture? Well, I guess that goes back to the question of whether a clear error is reviewable on an interlocutory appeal. That's the question I'm asking. And I... Answer. No. Okay. And then I know that from my perspective, even if the Hartwell statement was present at the time, it is clear from the circumstances that Officer Miller declared his intent, he clearly declared his intent to arrest Greg Robinson prior to taking that statement. Everything about it, everything he recorded about what happened with those iPods suggests that Hartwell was talking freely, giving everything up about everybody and that he described exactly what happened with those iPods and they recovered them all or they accounted for all of them. Nobody asked any follow-up questions about anything to clarify this confusing, ambiguous statement under the agreement I was supposed to give them. Did you give them? What was the agreement? There's no evidence that Greg blocked any cameras. I don't know that Greg knew where the cameras were to block. I don't know that anybody knew where the cameras... They've got cameras all over Walmart and I don't think they're that conspicuous but there was no evidence that he engaged in any blocking of any cameras. You can see Jeremy Hartwell's actions perfectly clear on the entire video. The statement itself raises more questions than it answers and it suggests very strongly that this is a statement requested to support a preconceived idea and that nobody followed through with anything. There's no question that Hartwell would have given that statement. There's no question that the actions of Officer Miller repeatedly thereafter after taking that statement and after arresting Greg Robinson were, I'm done with this, I'm not doing it. He didn't show up at his preliminary hearing the first time. He didn't return Higginbotham's calls the second time. That was it. The statement is just what it is. What it obviously is, everywhere except perhaps in a court of law, it is obviously a fabricated statement made for the convenience of somebody who had some motive to do something that they shouldn't have been doing and it doesn't make sense. No questions were asked about it. No follow-up questions were asked about it. A person whose job was to recover iPods doesn't even say that he asked. Why do you say it was a fabricated statement? Because it's fabricated. Because it's a fabrication. Who made it up? Uh, my, well, I mean, my guess... It's the record show who made it up. Well, it would be either Miller or Hartwell, but it's not fabricated in the sense that Hartwell gave the statement, but it's fabricated in the sense that there's no... Well, you can't say it's fabricated. You can say Hartwell may have been mistaken, but he gave the statement. It's not a fabricated statement. He was asked to give the statement and he gave the statement and that is what happened. There's just no question about that. In the real world, there's no question. Hartwell... Miller left with a determination to arrest Robinson. He got all the information from Hartwell about what he'd done with the iPods. He got volunteer... Hartwell volunteered everything that he'd done, everything that happened. He didn't put any of that in his recorded notes and then at the end of it, he gives this little statement that is vague, it's confusing, it doesn't commit him to anything and nobody followed up on any of that and nobody asked about it and then Miller washed his hands of it and it was never brought to light at any point later in the proceedings until this lawsuit was filed. It wasn't even given to me in a FOIA request. Thank you for your time. Thank you. Just briefly, your honors. My colleague was arguing that Officer Miller made up his mind before taking the statement to arrest Mr. Robinson. His intent to arrest him before or after the statement was immaterial. What the court needs to look at is what a reasonable officer, having all the information the officers possessed, had at the moment the seizure occurred, at the moment of the arrest. So whether he decided on the 12th when he was contacted by Walmart to arrest these guys simply doesn't matter. What matters is the videos, the evidence that the officers possess, the videos and the statement from Mr. Hartwell. Well, you have more than that. It's unfortunate the way this case has developed but you have number one, conclusive evidence that there was a theft, embezzlement of iPods. Number two, you know Hartwell did it. The only question at issue is whether Davis and Robinson were complicit. And the question then is it, and you don't have to prove that, is it probable cause sufficient to say that? And the evidence shows that these gentlemen were together in simultaneous time. They were functioning in a manner that was somewhat strange and that Hartwell then said he was going to give Robinson one of the iPods. He was implicit. Question is a reasonable officer having that information, can he pick them up and put them to his defense? And you seem to be missing all of those points. You keep focusing on whether there's a conviction, you can rest on the video or whatever. I don't know what your standard is but it seems to me we're talking about the common sense notion does an officer believe reasonably that a crime had been committed? We know a crime had been committed. We know who committed the crime. We know it was stolen. And the only issue is whether Davis and Robinson were complicit. And there's plenty of evidence that suggests that. Now why isn't that your case? That is, that is. You haven't argued it. And your honor, I think where we've muddied the waters is we've essentially been arguing what would have been needed at the criminal trial if this had gone forward. It's not a needed a criminal trial. This is a probable cause issue and it's putting their estates and their lives at stake because somebody says, even if they were found innocent and acquitted, it doesn't mean the officers acted unreasonably. They're entitled in a case of doubt to some protection. Correct, that's what this court said the last time. In fairness, it's not that they were. I'm still troubled by the fact that it's not that they were found, that Robinson was found innocent. Another judge found there's no probable cause to arrest him and try him. And I'm still, I just, I know you may not know the answer to this question, but I will just say to me it looks like the prosecutor fought. He didn't really trust the Hartwell statement and he didn't think the video was that probative because he didn't show any, when the magistrate judge said, if you've got anything that shows probable cause, please give it to me. And the prosecutor said, I don't have anything. I've been in magistrate court when they're doing probable cause hearings and it is a cattle call. And usually the officers are right there. I understand. I cannot speak to why the prosecutor did not call officers who were there ready. I know. And I guess I just want to give you a chance. I understand you don't know what happened, but I have a real concern about this. It just looks to me like nobody on the ground thought there was probable cause. And I understand it's an objective standard, not a subjective standard, but that troubles me. Um, and I think Judge Niemeyer, you were, when you were asking my colleague to move on from Peterson and Moyer, you were speaking of the institutional knowledge doctrine. I think that any knowledge that Miller would have had would be, as long as it makes it into the file, would be available to Peterson and Moyer. And they did in fact testify that they reviewed the case file. They reviewed the videos and they also spoke to prosecutors um, and felt that we found the charges were proper. Any other questions? We would just ask that you remain in this case, um, with instructions to grant qualified immunity to the officers. Thank you, counsel. We'll come down to brief counsel and move on to the next case.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris